## Case No. 9,393.
### MEEKS v. VASSAULT et al.
### [3 Sawy. 206.] [1]
Circuit Court, D. California. Nov. 30, 1874. [2]

ADMINISTRATORS — REAL ESTATE ASSETS—SALE— TRUSTEE—CESTUI QUE TRUST — ACTION BY ADMINISTRATOR—BAR—REMEDY—EFFECT OF JUDGMENT.

1. Under section 190 of the probate act of California, an action to recover lands in the possession of a purchaser, at a sale made by an acting administrator under the orders of a probate court, even though the sale is void, must be brought within three years next after the sale, or it will be barred.

2. Under the statutes of California, real estate of deceased parties is assets in the hands of the administrator, to be administered like personalty.

3. Under the statutes of California, the exclusive right to the possession of real estate of the deceased, and the exclusive right of action to recover it is vested in the administrator, pending the administration, or till the lands are distributed to the heirs.

[Cited in Sharon v. Terry, 36 Fed. 353.]

[Distinguished in Staples v. Connor, 79 Cal. 15, 21 Pac. 380.]

4. The heir cannot maintain an action to recover the real estate of the deceased after administration has commenced, until the administration is closed, or the land has been distributed to the heir.

5. The pendency of administration and the inability of the heir to maintain an action to recover real estate by reason thereof, and of the present right of action being in the administrator, do not constitute a disability on the part of the heir within the meaning of section 191 of the probate act of California. Such a state of facts does not interrupt or prevent the running of the statute, as provided in section 190.

6. For the purpose of bringing an action to recover land belonging to the intestate's estate, the administrator is the trustee or representative of the heir, and since the exclusive right to bring the action is vested in him, the law also imposes upon him the duty to bring it.

7. Where the administrator neglects to bring an action to recover property of the estate until it is barred under the statute of limitations applicable to the subject, the heir is also barred, even though the heir is a minor at the time the action accrues to the administrator.

[Cited in McLeran v. Benton, 73 Cal. 343, 14 Pac. 884.]

8. In such case the heir has his remedy against the administrator and his bondsmen, or he may, in a proper proceeding, compel the administrator to sue.

9. Where the trustee having the right of action is barred, the cestui que trust is barred.

1 [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

2 [Affirmed in 100 U. S. 564.]

10. If the title to real estate of the deceased is put in issue and determined in an action between the administrator and another, the judgment will bind the heir to the same extent that it binds the administrator.

11. Sections 258 and 259 of the probate act. do not limit the operation of section 190.

12. An adverse possession of land for the time prescribed by the statute of limitations, vests the title thereto in the adverse possessor.

[This was an action of ejectment by William Newton Meeks against Ferdinand Vassault and others.] The land in controversy is one hundred-vara lot number ten, of the hundred-vara survey south of Market street, in the city of San Francisco, and within the limits embraced by the Van Ness ordinance, the decree confirming the pueblo title, and the acts of the legislature of California and of congress, confirming it; and not within any of the exceptions mentioned in said decree or in said acts. Said lot was granted by George Hyde, alcalde of San Francisco, to James G. D. Dunleavy, January 14, 1847, and possession duly taken under said grant. Said grant was duly recorded in "Book A" of alcalde grants on the same day. On June 2, 1847, said Dunleavy conveyed said lot to George Harlan, who afterwards died intestate in Santa Clara county, of which he was then a resident, July 8, 1850, seized of all the right, title and interest in said land derived from said grant and the possession thereunder. Said George Harlan left surviving him as his heirs-at-law, a widow, six children, and two grandchildren, lawful issue of a deceased child, who died during the lifetime of said Harlan, of whom four of said children, and the two grandchildren were minors, and the others adults of full legal age. The said widow and three eldest children conveyed all their interest in said lot to plaintiff at various times prior to August 11, 1874; the three next eldest in 1869, and the two grandchildren in 1872, by virtue of which said several conveyances, all the interest of the heirs of Harlan, deceased, in said lot, became vested in said plaintiff before the commencement of this suit. Some of said heirs attained their majority within three years next before the commencement of this action. Before, and at the time of the commencement of this action, the several defendants were severally in possession of the portions of said lot described in their respective answers. On August 19, 1850, Henry C. Smith was appointed by the probate court of Santa Clara county, administrator of the estate of said George Harlan, deceased. Letters of administration having issued to him, he duly qualified and entered upon his duties as administrator. On December 31, 1853, said Henry C. Smith, without first having settled his accounts as administrator, filed in the Probate Court his resignation in writing of his administratorship; and thereupon the court, without in express terms accepting said resignation, made an order in which, after the introduction, "Now comes Henry C. Smith,

administrator of the above estate, and files his resignation as administrator of said estate," he is ordered to turn over to John Yontz, public administrator, all the said estate; to make with said public administrator a full and complete settlement relating to said estate on or before the first day of the next succeeding term of said court, and providing that upon such full settlement he and his sureties should be discharged. And it was further ordered that said estate be placed in the hands of said public administrator "for purposes of general administration." Sufficient funds had come to the hands of Smith, had they been properly applied to have paid all the debts of the estate, together with the expenses of administration. No final settlement of the accounts of said Smith as administrator was ever made, either with the public administrator or the court, but no further proceedings were had with respect to his removal except such as are implied from the recital in the foregoing order and from the appointment of a successor, and the subsequent recognition of the latter as administrator in the further proceedings of the court. On June 15, 1855, Benjamin Aspinwall, on his own petition, was by the same court, appointed administrator of said estate of Harlan, deceased. He duly qualified as such, and letters of administration were issued to him in due form of law, under which he acted till he resigned, settled his accounts, and was discharged. On August 25, 1855, said Aspinwall, as administrator, presented a petition to the probate court, praying the sale of said lot number ten, in order to raise funds for the payment of a judgment before recovered by himself personally against said Smith as administrator. Said petition was defective in that it omitted to state certain facts required by the statute to give authority to the court to order a sale. After notice given upon November 10, 1855, the probate court upon said petition, made an order for the sale of said lot. On January 7, 1856, in pursuance of said order, said Aspinwall, acting as such administrator, upon due notice, exposed said lot number ten to sale at public auction in thirty-two subdivisions, and sold the same in said subdivisions to said several defendants and their grantors respectively. Said sale was fairly conducted. The several purchasers paid the several sums bid at said sale to said Aspinwall. The sales, with the proper vouchers and proofs, having been reported to the probate court, they were confirmed, and deeds of conveyance ordered to be given to the several purchasers; and deeds were accordingly executed and delivered by the administrator on February 13, 1856, purporting to convey the fee simple of said lots held by Harlan at his decease.

Said several grantees of Aspinwall as administrator in said conveyances. made in pursuance of said sale. either immediately upon their execution, to wit, on February 13, 1856,

entered into the actual possession of the subdivisions respectively purported to be conveyed thereby, or being already in possession, continued in such possession, and from that time forth till the commencement of this action, they and their grantees, including the defendants to this action, have actually and continuously possessed said several subdivisions, claiming title thereto in fee simple, under and by virtue of said several deeds of conveyance, and so possessing and claiming them openly, notoriously, exclusively of any other right, and adversely to all the world. Some of said defendants are the original grantees in said deeds from Aspinwall as such administrator, and the others have acquired the title of other such grantees of Aspinwall by conveyance in due form of law and for valuable considerations by them paid. Said Aspinwall continued to act as administrator till May 12, 1864, when, upon a citation issued, a rendering of his accounts, and a settlement, allowance and confirmation thereof by the probate court, he was discharged by order of the court. Afterwards, on May 12, 1864, Joel Harlan and Lucian B. Huff were appointed administrators of said estate. Having duly qualified, they entered upon the discharge of their duties as administrators, and they are still acting as such, the administration of said estate not having been finally closed. On October 16, 1869, the plaintiff filed a petition in the probate court in which the administration of said Harlan, deceased, was pending, stating, among other things, that said Joel Harlan and Lucian B. Huff were the administrators of said estate; that no debts or claims of any kind had been presented to them or either of them, as such, against said estate, and that none existed; that he had acquired from the said heirs of said Harlan, and then owned all the right, title and interest, which said heirs had derived from said Harlan in and to said lot number ten, and praying that said lot number ten might be distributed to said plaintiff, and he be declared by the court to be the owner thereof upon his giving security for the payment of his proportion of the debts of the estate. Afterwards, on November 6, 1869, a citation having been issued and notice given, and a hearing having been had upon said petition, it was by said court "ordered, adjudged and decreed, that there be, and there hereby is, distributed to the said Wm. Newton Meeks (the plaintiff in this action), said lot number ten (10), and he is hereby adjudged and decreed to be the owner thereof in fee simple absolute as against the said administrators and their successors, and the heirs at law of said deceased, and entitled to the possession thereof." Afterwards, on September 30, 1872, said Meeks, as plaintiff, commenced this action.

Wm. H. Patterson, for plaintiff.
S. M. Wilson and Alexander Campbell, for defendants.

SAWYER, Circuit Judge. The probate proceedings down to, and including the administration of Aspinwall, are the same in question in the supreme court of California in Haynes v. Meeks, 20 Cal. 288, and the facts relating thereto are fully set out in the report of that case. These proceedings were also, to some extent, considered by the supreme court of California in Haynes v. Meeks, 10 Cal. 110; Meeks v. Hahn, 20 Cal. 621; and Harlan v. Peck, 33 Cal. 515. The sale by Aspinwall having been adjudged void in Haynes v. Meeks, by the highest court in the state, plaintiff claims a right to recover. But the defendants set up and rely on the special statute of limitations found in the probate act relating to administrators' sales. Section 190 of that act is as follows: "No action for the recovery of any estate sold by an executor, or administrator, under the provisions of this chapter, shall be maintained by any heir or other person claiming under the deceased testator or intestate unless it be commenced within three years next after the sale." If this section is applicable to a void sale, like the one in question, then the action was long since barred, unless there is some other provision of the statute, or rule of law, that preserves the right of action in the plaintiff upon the facts of this case. That the statute is applicable to the sale in question, has been settled, and I think correctly, by the supreme court of California, in cases arising upon a sale of a portion of this very estate. Harlan v. Peck, 33 Cal. 520, and Harlan v. Miller, Jan. Term, 1868, affirming it. This being the construction of a statute of California by the highest court of the state, it is conclusive in this court. Walker v. State Harbor Commissioners, 17 Wall. [84 U. S.] 648; Williams v. Kirtland, 13 Wall. [80 U. S.] 311; Tioga R. R. v. Blossburg & C. R. R., 20 Wall. [87 U. S.] 137. The statute would be useless if it did not apply to a void sale. A purchaser at a valid sale would not need the protection of the statute.

Under the statutes of California real estate, like personalty, is assets in the hands of the administrator, and is to be administered, and applied first to the payment of the expenses of administration and debts of the deceased, and then the residue after satisfying all lawful claims distributed to the heirs. Realty and personalty stand upon the same footing, except that the personalty must be first exhausted before the real estate can be sold and applied to payment of the debts of the deceased. The right of possession, and right of action to recover possession of the real estate, vests exclusively in the administrator. The heirs cannot maintain an action to recover the real estate pending the administration, or after administration has been commenced, until the estate has been settled, or the real estate has been distributed to them by the probate court. This is also settled by numerous de-

cisions of the supreme court of this state. Meeks v. Hahn, 20 Cal. 621; Meeks v. Kirby, 47 Cal. 168; Chapman v. Hollister, 42 Cal. 462; Burton v. Lies, 21 Cal. 91. This being so, it is insisted by plaintiff's counsel, that since neither he nor his grantors, the heirs of Harlan, could maintain an action for the recovery of the lands in controversy pending the administration, or until distributed by the probate court on November 6, 1869, they were under a legal disability to sue, within the meaning of section 191 of the probate act; and the action having been brought within three years after the said distribution, that it is not barred. Section 191 is as follows: "The preceding section shall not apply to minors or others under any other legal disability to sue at the time when the right of action shall first accrue; but all such persons may commence such action at any time within three years after the removal of the disability." The question is, what is the meaning of the phrase, "any legal disability to sue," as here used? This provision does not define the term "legal disability." It assumes that there are other disabilities known to the law, and we must go to the law as it existed outside of this section to ascertain what they are. The provision mentions "minors," and adds, "or others under any legal disability."

Upon turning to the general statute of limitations we find specified as disabilities, infancy, insanity, imprisonment for criminal offenses, coverture, etc., but neither in that nor in any other statute is anything of the kind now claimed as a disability, named or recognized as such. The definition of "disability," as given by Bouvier, is "The want of legal capacity to do a thing." Bouv. Dict. The disability may relate to the power to contract, or to bring suits; and may arise out of want of sufficient understanding, as idiocy, lunacy, infancy; or, want of freedom of will, as in the case of married women, and persons under duress; or out of the policy of the law, as alienage when the alien is an enemy, outlawry, attainder, praemunire, and the like. The disability is something pertaining to the person of the party—a personal incapacity—and not to the cause of action or his relation to it. There must be a present right of action in the person, but some want of capacity to sue. In this case there was no want of power, or capacity in the person. The difficulty is in his relation to the subject-matter of the suit. There was no present right of action in the heir, or his vendee. He had not yet succeeded to the right of action. The cause of action had accrued, but it was in the administrator, and had not yet passed to the heir. There was, however, a party in existence competent to sue—one to whom the law gives the right, and upon whom it imposes the duty to sue. This party is the administrator who is the trustee of the estate, and who for this purpose represents both the heirs and the

creditors of the estate. He represents the title. If the administrator sues, or is sued, and fails when the title is in issue and determined, the judgment is binding both upon the heirs and the creditors of the estate. The matters thus adjudged would afterwards be res adjudicata between the opposing party in the action and the heirs, as well as the administrator. This has also been settled by the supreme court of the state. Cunningham v. Ashley, 45 Cal. 485. This could not be so unless the administrator represented the heirs. The disability mentioned is undoubtedly one of the disabilities already existing recognized by the statute, such as those mentioned in the statute of limitations affecting the capacity to sue of a person having a present right of action existing in himself, and which excuses him from bringing the action. It cannot mean the want of a present cause of action. If there is no present right of action in a party, he has no occasion for a present capacity, an ability, to sue, or, for an excuse for not suing. The administrator being invested with the right of action to recover land of the estate, if he neglects to sue too long the action is barred, and as he represents the creditors and heirs for this purpose, it has often been decided that when an action is barred as to him, it is barred as to the heir, even though the heir be at the time a minor, or resting under some other disability. Darnell v. Adams, 13 B. Mon. 278, 279; Couch's Heirs v. Couch's Adm'r, 9 B. Mon. 161, 162; Rosson v. Anderson, Id. 425; Williams v. Otey, 8 Humph. 569; Wooldridge v. Planter's Bank, 1 Sneed, 297; Worthy v. Johnson, 10 Ga. 358; Long v. Cason, 4 Rich. Eq. Cas. 60; Wych v. East India Co., 3 P. Wms. 309; Pentland v. Stokes, 2 Ball & B. 74; Smilie v. Biffle, 2 Barr. [2 Pa. St.] 52. Several of these are cases of administrators, and others of other trustees, where the cestui que trust was held to be barred when the trustee was barred. It is difficult to see how upon principle it should be otherwise. The moment an adverse possession by a wrong doer, of lands belonging to an estate in course of administration commences, a cause of action arises to recover it; but the policy of the law vests it exclusively in the administrator, and there it remains until the lands are lawfully sold and conveyed for purposes of administration, or are distributed to the heir. In the former case the right of action passes to the purchaser; in the latter to the heir. It is the same cause of action, and it exists in but one party at the same time. If the cause of action is barred before the sale and conveyance to the purchaser, or the distribution to the heir, there is none left to pass to either, and neither ever acquires any valid cause of action at all. If the authorities cited are not all wrong, the difficulty with the plaintiff is, not that he was laboring under a disability to sue upon an existing cause of ac-

tion in his favor, but that he never became vested with a living cause of action. The cause of action became barred, and the title vested in the adverse possessor under the special statute. of limitations before it came to him. Statutes of limitations are now regarded as statutes of repose, and not mere penalties for neglect, and are intended for the benefit of those who have purchased and occupied lands in good faith, believing they acquired a good title; and the policy of the law seems to have been, to shorten the time within which rights acquired in good faith under the sanction of judicial proceedings in probate courts can be disturbed. Whether as effective as desirable or not, the heirs are not without a remedy. They have a remedy against the administrator and upon the administrators' bond; and they may, in a proper proceeding, also compel the administrator to sue. Smilie v. Biffle, 2 Barr. [2 Pa. St.] 52–54; Tyler v. Houghton, 25 Cal. 29. Besides, it is not apparent in this case why the partial distribution could not have been made as well within three years, as more than thirteen years after the sale, and thus have enabled the distributees to sue. There must have been gross negligence on the part of the heirs in not compelling the several administrators to account, and in not applying for a distribution. Ample funds appear to have come to the hands of the administrator to pay all claims against the estate as early as 1855. If the heirs are not bound where the bar has attached as against the administrator, the administration, by the non-action of the heirs, might be kept open indefinitely. and the right of action prolonged for a century at their option.

The defendants entered under their conveyances in 1856. If, as claimed by plaintiff, the whole proceedings were void, a right of action accrued in favor of the administrator to recover possession immediately; and it was barred as to him at the end of three years, or in February, 1859. The partial distribution to plaintiff was not made till November, 1869, more than ten years after the bar of the statute attached as against the administrator. If the cause of action is not barred as to the heirs and the plaintiff, their successor in interest, then, we have this curious condition of things.

For upwards of ten years the defendants were wrongfully in possession of the land, and yet there was no right of action in favor of anybody to recover. The administrator could not recover because he was barred. The heirs could not recover because the law vested the right of action exclusively in the administrator. The heirs would at length acquire the land, while it would cease to be assets of the estate. and the creditors be cut off. Why should the creditors, who, under the statute, have the first lien upon the estate, be barred by the neglect of the administrator, while the heirs. whose interest is subordinate, are not? The language of the statute is express, that "no action shall be maintained by any heir or other person claiming under the deceased testator or intestate, unless it be commenced within three years next after the sale." The heir is named in terms.

The plaintiff's counsel insists that under our statute the heir occupies a position similar to a remainderman; that the remainderman is not barred by the neglect of the holder of the preceding estate to sue until his right is lost, and that for similar reasons, the heir is not barred by the failure of the administrator to sue. The decisions relating to remaindermen seem to depend upon the particular language of the various statutes under which they arose, and to vary with the language. But whatever the rule may be with respect to remaindermen, I do not think their position is like that of the heir under our statute. The owner of the particular estate and the remaindermen do not represent the same estate. There is no connection whatever between them, except that one estate begins where the other shall end. The intermediate owner is in no respect the trustee or representative of the remainderman. But the administrator is a trustee of the heir and the creditor. He represents the heir and the creditor in the administration. As we have seen, a judgment in a suit to which the administrator is a party, and in which the title to the estate is determined, binds the heir. This must be because he represents the heir. I put the decision upon the statute, and upon this principle as sustained by the authorities. The same statute which vests the right to the exclusive possession of the real estate, and the exclusive right of action to recover it from a disseisor pending administration, and which confers the power to sell and convey title to the real estate under the authority and direction of the probate court. also prescribes the time within which an action must be brought by the heir or any other party claiming under the deceased. to recover the land from a purchaser in possession under a sale improperly made. It also prescribes the exceptions to the general rule laid down, and the court is not authorized upon the idea that other cases are within the equity, though not within the letter of the statute, to interpolate other exceptions than those expressed in the statute itself. McIver v. Ragan, 2 Wheat. [15 U. S.] 28; Tynan v. Walker, 35 Cal. 643.

Sections 258, 259, providing for a final distribution to the parties entitled, and providing that each party to whom a specific portion is allotted, "shall have the right to demand and recover their respective shares from the executor, administrator, or any person having the same in possession," in no respect limit the provisions of section 190, as claimed by plaintiff. These sections only apply to property belonging to the estate at the time of distribution. Of course, there can be no title created by the act of distribu-

tion. Nothing can be given to the distributee but that which remains in possession or custody of the administrator, as a portion of the estate. Property lawfully sold by the administrator and conveyed by valid conveyance, ceases to be a portion of the estate; and the fact that the court should assume to distribute such property to the heir would not revest a title in the distributee. The adverse possession for the time prescribed vests a perfect title in the possessor as against the former holder of the title and all the world. Arrington v. Liscom, 34 Cal. 380–387; Cannon v. Stockmon, 36 Cal. 541; Lamb v. Davenport [Case No. 8,015]; Winthrop v. Benson, 31 Me. 384; Leffingwell v. Warren, 2 Black [67 U. S.] 605, and cases therein cited.

Suppose an action upon a promissory note or other demand or to recover a piece of personal property belonging to the estate had become barred under the general statute of limitations by neglect of the administrator to sue, would it be claimed that a subsequent distribution of the dead cause of action to the heir, would give it new life and enable him to recover on it? I think no such claim would be made. Yet sections 258, 259, would as clearly apply to such cause of action as to real estate, the title to which has been vested in an adverse possessor under the section in question. I see no way of escape from the conclusion that plaintiff's action is barred under section 190 of the probate act. There must be a judgment for defendants with costs, and it is so ordered.

[The cause was taken by the plaintiff, on a writ of error, to the supreme court, where the judgment of the circuit court was affirmed. 100 U. S. 564.]