COLORADO COURT OF APPEALS                    2017COA111

Court of Appeals No. 16CA1274
Adams County District Court No. 15CV31554
Honorable Ted C. Tow, Judge

_____

T.D.,

Plaintiff-Appellant,

v.

Gilbert Wiseman,

Defendant-Appellee.

_____

JUDGMENT AFFIRMED

Division II
Opinion by JUDGE BERNARD
Dailey and Fox, JJ., concur

Announced August 10, 2017

_____

Stone Rosen Fuller P.C., Graham Fuller, Boulder, Colorado; Erin B. Eastvedt, Longmont, Colorado, for Plaintiff-Appellant

Paul H. Stevens, Thornton, Colorado, for Defendant-Appellee

¶ 1    This case requires us to decide whether the record contains any disputed facts that plaintiff, T.D., was under a "legal disability" for purposes of tolling the applicable statute of limitations.  Neither the General Assembly nor Colorado appellate courts have defined this phrase.

¶ 2    We hold that "legal disability" for purposes of section 13-80-103.7(3.5)(a), C.R.S. 2016, means an inability to bring a lawsuit based on some policy of the law.  Because we conclude that the record does not contain any disputed facts about the question whether T.D. was under a "legal disability" and because we disagree with T.D.'s other contentions, we affirm the trial court's decision to grant the summary judgment motion that defendant, Gilbert Wiseman, had filed.

I.    Background

¶ 3    T.D.'s complaint alleged that she had endured ten years of sexual and physical abuse at the hands of defendant, her former stepfather.  The complaint added that defendant had raped her, that he had forced her to perform oral sex on him, and that he would "physically beat [her] up . . . and smother her with pillows."

She alleged that she was seven years old when the abuse began and that it continued until about 1990, when she was in high school.

¶ 4 T.D. alleged that the abuse caused her to become "dependent on drugs and alcohol." She also suffered from post-traumatic stress disorder, psychological disorders, self-mutilation, eating disorders, depression, and a "cycle of abusive relationships."

¶ 5 In August 2005, T.D. disclosed defendant's alleged abuse to the doctors who had been treating her for her various physical and psychological issues. Copies of the doctors' notes in the record state that she had told them that defendant "molested [her] as [a] child between 7-13 [years old]" and that she had reported that defendant "sexually molested her from age 7 through 13." She also told the doctors that her mother had believed her outcry about the abuse, but that her mother could not stand up to defendant. (We could not find an explanation in the record of the inconsistency between T.D.'s statement to the doctors that defendant had abused her for about six years and her statement in the first amended complaint that he had abused her for about ten years.)

¶ 6 T.D. tried to kill herself in 2012. She sobered up after this unsuccessful attempt. Once she had become sober, she alleged

that she had "realized that she had been injured by defendant's actions and attributed those injuries to the assaults perpetrated upon her."

¶ 7     Defendant and T.D.'s mother divorced in 2015. That same year, T.D. learned that she had "significant abnormalities of the low back, abdominal wall, [and] pelvic floor." Her doctors thought that these injuries were "associated" with "early victimization/traumatization."

¶ 8     T.D. filed a lawsuit against defendant in the fall of 2015. She asserted assault, battery, sexual assault and battery, extreme and outrageous conduct, and false imprisonment claims.

¶ 9     Defendant filed a motion for summary judgment. He asserted that T.D.'s claims had accrued when she disclosed the alleged abuse to her doctors in 2005. As a result, defendant asserted, T.D.'s claims were time barred by the six-year statute of limitations found in section 13-80-103.7(1) because she should have filed her lawsuit no later than 2011.

¶ 10    T.D. countered that the record before the trial court contained genuine issues of fact concerning whether she had been a "person under disability" until 2012 because of her addictions and

psychiatric disorder.  If she had been such a person, then the statute of limitations would have been tolled until her disability had lifted.  She added that there were also disputed facts about when her claims had accrued.

¶ 11     The trial court granted defendant's motion for summary judgment.  It decided that there were no genuine issues of material fact in the record about when T.D.'s claims accrued or about whether the statute of limitations barred those claims.

## II.     Summary Judgment Principles

¶ 12     Summary judgment is a "drastic remedy," *Brodeur v. Am. Home Assurance Co.*, 169 P.3d 139, 146 (Colo. 2007), that is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law," C.R.C.P. 56(c).  The nonmoving party is entitled to the benefit of all favorable inferences that a court can reasonably draw from the undisputed facts.  *Brodeur*, 169 P.3d at 146.  And the court must resolve all doubts against the moving party.  *Id.*

¶ 13    We review a trial court's decision to grant a motion for summary judgment de novo. *Select Energy Servs., LLC v. K-LOW, LLC*, 2017 CO 43, ¶ 12.

## III.    Claim Accrual

¶ 14    The trial court decided that T.D.'s claim accrued in 2005. To the extent that T.D. asserted in a footnote in the opening brief that the record contained disputed facts about when her claims accrued, we decline to address this claim. She only made a cursory reference to this assertion, and she did not provide any analysis or authority. *See Prospect 34, LLC v. Gunnison Cty. Bd. of Cty. Comm'rs*, 2015 COA 160, ¶ 28 (noting that if an appellant makes a conclusory argument, without citation to any authority supporting the position, we may decline to address it); *see also People v. Aguilar*, 2012 COA 181, ¶ 36 (noting that appellant had abandoned a claim raised below but not reasserted on appeal).

¶ 15    Because the issue of when the claim accrued is not properly before us, we do not have to decide when it accrued. We will instead assume that it accrued, at the latest, in 2005.

## IV.    Tolling the Statute of Limitations

¶ 16    We next address this question: Does the record contain a factual dispute about whether the applicable statute of limitations was tolled because, under the statute, T.D. was a "person under disability"?  We answer this question "no."

## A.    Tolling Provisions

¶ 17    Civil suits based on allegations that a defendant sexually abused a child must be brought within six years after either (1) the cause of action accrues; or (2) "a disability has been removed for a person under disability," whichever occurs later.  § 13-80-103.7(1).

¶ 18    A plaintiff is a "person under disability" for the purposes of tolling the statute of limitations if she is (1) "a minor under eighteen years of age"; (2) "declared mentally incompetent"; (3) "under other legal disability and who does not have a legal guardian"; or (4) "in a special relationship with the perpetrator of the assault" and "psychologically or emotionally unable to acknowledge the assault or offense and the resulting harm."  § 13-80-103.7(3.5)(a).

### 1.    "A Minor under Eighteen Years of Age"

¶ 19    T.D. has not been a minor since the very early 1990s.  Her first amended complaint alleged that defendant began abusing her in 1980, when she was "approximately" seven years old, and that he

6

continued to sexually assault her until 1990, when she was "approximately" seventeen years old. The record indicates that she was forty-three years old when the trial court granted defendant's summary judgment motion in 2016. We therefore conclude that the record establishes that she was not a minor from 2005 to 2011, when the statute of limitations was running.

¶ 20    So our next task is to decide whether the record contained disputed facts that T.D. was "mentally incompetent," "a person under other legal disability," or in a "special relationship" with defendant and "psychologically or emotionally unable to acknowledge" the offense and harm. *See id.* We apply the statutory definitions of these terms in effect when T.D.'s claims accrued in 2005. *See In re Estate of Kiser*, 72 P.3d 425, 430 (Colo. App. 2003)(noting that the statute in effect at the time the claim accrues generally governs the claim, unless the General Assembly clearly intends otherwise).

2.    "[M]entally [I]ncompetent"

a.    Law

¶ 21    A person is "mentally incompetent" if she is "insane," "mentally ill," "gravely disabled," or if she is a "person with a

7

developmental disability." § 27-10.5-135(1), C.R.S. 2005. (A similar provision is now codified at section 25.5-10-237(1), C.R.S. 2016. *See* Ch. 323, sec. 1, § 25.5-10-237(1), 2013 Colo. Sess. Laws 1780.) T.D. does not contend that she was insane, so we will only address the other definitions of the term "mentally incompetent."

- A person is "mentally ill" if she has a "substantial disorder of the cognitive, volitional, or emotional processes that grossly impairs judgment or capacity to recognize reality or to control behavior[.]" § 27-10-102(7), C.R.S. 2005. (A similar provision is now codified at section 27-65-102(14), C.R.S. 2016. *See* Ch. 298, sec. 2, § 27-10-107(8.5), 2006 Colo. Sess. Laws 1373-74 (removing "mentally ill person" from the statute and adding "person with a mental illness"); *see also* Ch. 188, sec. 2, § 27-65-102(14), 2010 Colo. Sess. Laws 678 (relocating the definition for "person with a mental illness").)

- A person is "gravely disabled" if, because of mental illness, she (1) is "in danger of serious physical harm" based on her "inability or failure to provide [for herself]

8

the essential human needs of food, clothing, shelter, and medical care"; or (2) lacks judgment in managing her resources and social relations "to the extent that [her] health or safety is significantly endangered," and that she "lacks the capacity to understand that this is so." § 27-10-102(5)(a), C.R.S. 2005. (A similar provision is now codified at section 27-65-102(9)(a), C.R.S. 2016. *See* Ch. 188, sec. 2, § 27-65-102(9)(a), 2010 Colo. Sess. Laws 677.)

- A "developmental disability" denotes a disability, manifested by the time the person is twenty-two years old, that is attributable to mental retardation "or related conditions" like "cerebral palsy, epilepsy, autism, or other neurological conditions," if the condition results in a similar impairment "to that of a person with mental retardation." § 27-10.5-102(11)(a), C.R.S. 2013; § 25.5-10-202(26)(a), C.R.S. 2016. And to be a "person with a developmental disability," the person must be designated as such by a "community-centered board."

§ 27-10.5-102(11)(b), C.R.S. 2013; § 25.5-10-202(26)(b), C.R.S. 2016.

b. Application

¶ 22    T.D. asserts that the following facts in the record raised a triable issue of fact that she was mentally incompetent:

- She became dependent on drugs and alcohol in high school and remained dependent until 2012. She "lost jobs due to [her] addiction."

- She has "serious mental disabilities" and "PTSD [post-traumatic stress disorder] and other psychological disorders, eating disorders, self-mutilation, depression, substance abuse, and a cycle of abusive relationships."

- She "gave [her] son up to the guardianship of [her] mother and [defendant] because of [her] addiction."

- Her ability to care for herself has been "disrupted," as well as her learning, concentration, thought, work, and her ability to perform "other important daily tasks."

- She "attempted suicide and was committed."

- Her "psychological issues remain . . . a difficult hurdle."

¶ 23    While the trial court could consider some of these facts, it could not consider others because they appeared in unsworn reports, orders, or letters.  *See McDaniels v. Laub*, 186 P.3d 86, 87 (Colo. App. 2008)("Unsworn expert witness reports are not admissible to support or oppose a motion for summary judgment."); *see also Cody Park Prop. Owners' Ass'n, Inc. v. Harder*, 251 P.3d 1, 4 (Colo. App. 2009)(same).  For example, we found some of the facts upon which T.D. relies on appeal in an unsworn report from a licensed clinical psychologist, some in an unsworn "Mental Residual Functional Capacity Statement," some in a report from a doctor who worked at the Denver Health Medical Center, and some references to medical reports, without any indication that they appeared in sworn documents, in an order from a federal administrative law judge who adjudicated T.D.'s Social Security disability claim in 2014.  (And, as we discuss in more detail below, the focus of the administrative law judge's order was on a period beginning in late December 2012.  The order's descriptions of diagnoses therefore have little factual connection to the period between 2005 and 2011 when the statute of limitations was running.)

¶ 24    The only sworn document in the record to which T.D. refers is her own affidavit. In it, she stated that the sexual abuse that defendant allegedly inflicted on her caused her "to be dependent on drugs and alcohol" and caused "a number of serious mental disabilities." She alleged that the disabilities "remain a difficult hurdle [in her] day to day life to this day" and that she has not "overcome" them. She added that her addictions and her "severe mental disabilities" "prevented [her] from comprehending what [defendant] had done to [her], the full extent of the ways he had injured [her], the severity of such injuries, and the likely expected duration of such injuries." And, her addiction and her "severe mental disabilities" "prevented [her] from psychologically and emotionally acknowledging the harm resulting from the abuse [she] had] sustained."

¶ 25    Beginning with "mentally ill," none of the facts set out above that we can consider — meaning the facts that appear in T.D.'s affidavit and not the facts that appear in the unsworn documents — suggest that T.D. suffered from a substantial disorder of her cognitive, volitional, or emotional processes that grossly impaired her judgment or her capacity to recognize reality or control her

behavior. *See* § 27-10-102(7), C.R.S. 2005 (defining "mentally ill"). The record does not explain whether any of the factors in T.D.'s affidavit rose to the level of a *substantial* disorder, or how such a disorder *grossly impaired* her judgment, or *grossly impaired* her capacity to recognize reality, or *grossly impaired* her capacity to control her behavior. So the record did not raise a disputed fact that she was mentally ill.

¶ 26    Her suicide attempt could raise an issue of fact that she was in danger of serious harm, one of the definitions of "gravely disabled." *See* § 27-10-102(5)(a), C.R.S. 2005. But this attempt occurred in 2012, after the six-year statute of limitations would have already run. *See* § 13-80-103.7(1), C.R.S. 2016.

¶ 27    The record does not otherwise suggest that T.D. was in danger of serious harm when the statute of limitations was running. And, although she alleged that her ability to care for herself was "disrupted," she did not allege how long the disruption lasted, and she did not assert that she was *unable* to provide essential human needs for herself. *See* § 27-10-102(5)(a), C.R.S. 2005. So the record did not contain a dispute about whether she was gravely disabled.

¶ 28    The record does not contain any evidence that T.D. suffered

from a developmental disability, as defined in section

27-10.5-102(11)(a), C.R.S. 2013, and section 25.5-10-202(26)(a),

C.R.S. 2016.  There is no indication that she suffered from mental

retardation or any of the listed "related conditions."  And there is no

suggestion that a "community-centered board" ever designated her

as suffering from any of those conditions.  § 27-10.5-102(11)(b),

C.R.S. 2013; § 25.5-10-202(26)(b), C.R.S. 2016.

¶ 29    T.D. points out that the Social Security Administration

adjudicated her "disabled" beginning on December 18, 2012, which

could suggest she was a "person under disability."  *See*

§ 27-10.5-102(11)(b), C.R.S. 2013; § 25.5-10-202(26)(b), C.R.S.

2016.  But, for three reasons, we conclude that this adjudication

does not bear the weight that T.D. puts on it.

¶ 30    First, recall that T.D.'s claim accrued in August 2005.  So,

even if T.D. had been disabled in December 2012, the statute of

limitations would still bar her claim because the six-year period ran

out in 2011.

¶ 31    Second, there is little in the adjudication that pertains to

T.D.'s medical status before 2012.  True enough, the adjudication

stated that T.D.'s medical records showed that she had "longstanding symptoms consistent with [post-traumatic stress disorder] relating to childhood sexual abuse." But T.D. had only "alleg[ed] disability since December 18, 2012." Consistent with this allegation, the adjudication stated that "the available medical record" "reflect[ed] treatment for an increase in mental symptoms" "beginning in December 2012."

¶ 32    Third, the Social Security definitions of "disabled" are different from the definitions that we deal with in this case, which we find in section 27-10.5-102(11)(a) and (b), C.R.S. 2013, and section 25.5-10-202(26)(a) and (b), C.R.S. 2016. *See* 42 U.S.C. § 416(i)(1) (2012)(explaining that "disability" under the Social Security statutes means an inability to engage in any substantial gainful activity because of physical or mental impairment or blindness); 42 U.S.C. § 423(d)(1) (2012)(same). For one example, a person could be "disabled" under the Social Security statutes without having a disability with an impairment similar "to that of a person with mental retardation." § 27-10.5-102(11)(a), C.R.S. 2013; 25.5-10-202(26)(a), C.R.S. 2016.

¶ 33    Given all this, we conclude that the record did not contain any disputed facts about whether T.D. was mentally incompetent under section 13-80-103.7(3.5)(a), C.R.S. 2016, at any point during the six years during which the statute of limitations ran.

### 3.    "[U]nder [O]ther [L]egal [D]isability"

#### a.    Law

¶ 34    Section 13-80-103.7(3.5)(a) does not define "under other legal disability." Colorado cases have not defined this phrase in any statutory context. *See Broyles v. Fort Lyon Canal Co.*, 695 P.2d 1136, 1143 n.7 (Colo. 1985)("It is not clear exactly what is encompassed within the term 'other legal disability.'"). So determining whether the record contained any disputed facts on whether T.D. was "under other legal disability" requires us to construe the statute.

¶ 35    A court's task when construing statutes is to "give effect to the intent of the General Assembly." *Grant v. People*, 48 P.3d 543, 546 (Colo. 2002)(citation omitted). The first stop on this path is to examine the plain language of the statute. *See id.* "Because we do not presume that the legislature used language idly, 'we give effect

16

to every word and render none superfluous.'" *People v. Iversen*,

2013 COA 40, ¶ 21 (citations omitted).

¶ 36    When a statute does not define a phrase, but the words at issue are commonly used, "we may refer to dictionary definitions in determining the plain and ordinary meaning of the word[s]." *Friends of the Black Forest Pres. Plan, Inc. v. Bd. of Cty. Comm'rs*, 2016 COA 54, ¶ 47 n.7 (citation omitted). Because words often have several meanings or nuanced meanings, "the precise meaning actually intended by an undefined term often must be determined by reference to other considerations, like the context in which it is used." *People v. Opana*, 2017 CO 56, ¶ 12.

¶ 37    "Where the language is clear, it is not necessary to resort to other tools of statutory construction." *Goodman v. Heritage Builders, Inc.*, 2017 CO 13, ¶ 7.

¶ 38    We interpret statutes de novo. *Iversen*, ¶ 21.

### b.    Application

¶ 39    One legal dictionary has defined "legal disability" this way:

> Incapacity to contract; infancy; unsoundness of mind. . . . Any condition which renders a person unable to act for himself or bind himself so that the law will not regard his acts as void or voidable.

17

> A disability which may relate to the power to contract or to bring suits, and which may arise out of want of sufficient understanding, as idiocy, lunacy, or want of freedom of will, as in the case of married women and persons under duress; or out of the policy of the law, as alienage when the alien is the enemy, outlawry, attainder, praemunire, and the like. . . .

Ballentine's Legal Dictionary 718-19 (3d ed. 1969). (We turned to Ballentine's Legal Dictionary because Black's Law Dictionary does not define the term.)

¶ 40    Given that "legal disability" has several plain meanings, then, our next duty is to determine *which* plain meaning applies here. To accomplish this task, we "reference . . . other considerations, like the context in which [legal disability] is used." *Opana*, ¶ 12.

¶ 41    The context of "legal disability" within section 13-80-103.7(3.5)(a) suggests that the phrase does not mean "infancy" or "unsoundness of mind." *See* Ballentine's Legal Dictionary at 718. Section 13-80-103.7(3.5)(a) explains that a person is under a disability if she is "a minor," "a person who has been declared mentally incompetent," a "person under other legal disability," or a person in a "special relationship" with the perpetrator who is "psychologically or emotionally unable to

18

acknowledge the assault or offense and the resulting harm." § 13-80-103.7(3.5)(a).

¶ 42    So defining "legal disability" as either "infancy" or "unsoundness of mind" would mean that "legal disability" would overlap with two other statutory components: that a plaintiff is a "minor" and that a plaintiff is "mentally incompetent."  We cannot construe the statute this way because we must avoid interpreting statutes in a manner that renders parts of them superfluous.  *Ryan Ranch Cmty. Ass'n, Inc. v. Kelley*, 2016 CO 65, ¶ 43.

¶ 43    The context of the statute does not suggest that "legal disability" means an "[i]ncapacity to contract" or "[a] disability which may relate to the power to contract."  Ballentine's Legal Dictionary at 718-19.  The purpose of section 13-80-103.7(3.5)(a) is to set out reasons to toll a statute of limitations, and a barrier to forming contracts does not, on its own, hinder someone from filing a timely lawsuit.  *Cf. Broyles*, 695 P.2d at 1143 n.7; *see also City & Cty. of Denver Sch. Dist. No. 1 v. Denver Classroom Teachers Ass'n*, 2017 CO 30, ¶ 12 (noting that we should avoid constructions that lead to illogical or absurd results).

¶ 44      But one of the dictionary definitions of "legal disability" comports with the context of section 13-80-103.7(3.5)(a): "A disability which may relate to the power . . . to bring suits . . . out of policy of the law."  Ballentine's Legal Dictionary at 719 (noting that "alienage when the alien is an enemy" or "outlawry" are examples of such a disability).  "The disability is something pertaining to the person of the party — a personal incapacity — and not to the cause of action or his relation to it."  *Terre Haute, I. & E. Traction Co. v. Reeves*, 108 N.E. 275, 277 (Ind. Ct. App. 1915)(quoting *Meeks v. Bassault*, 16 F. Cas. 1314, 1317 (D.C. Cal. 1874)).  Although the person has a "present right of action," there is also a "want of capacity to sue."  *Id.* (quoting *Meeks*, 16 F. Cas. at 1317).

¶ 45      (Examples of legal disability could arise out of public policy.  Courts in other states have defined the phrase "policy of the law" to be synonymous with "public policy."  *See Fuller v. TLC Prop. Mgmt., LLC*, 402 S.W.3d 101, 110 n.2 (Mo. Ct. App. 2013)(Rahmeyer, J., concurring); *Siloam Springs Hotel, LLC v. Century Sur. Co.*, 392 P.3d 262, 267 (Okla. 2017).  "Policy of the law," as synonymous with "public policy," is "expressed by the manifest will of the state which may be found in the Constitution, statutory provisions, and judicial

records." *Oliver v. Omnicare, Inc.*, 103 P.3d 626, 628 (Okla. Civ. App. 2004). To be sure, changes in public policy have also eliminated certain disabilities, such as the now-discredited disability imposed on married women because the law presumed them to lack "freedom of will." *See Meeks*, 16 F. Cas. at 1317, *aff'd sub nom. Meeks v. Olpherts*, 100 U.S. 564 (1880).)

¶ 46　A person who lacks the power to bring a lawsuit based on a "policy of the law" would be hindered from filing a *timely* lawsuit. So this plain language definition gives "sensible effect" to the tolling statute's parts. *People v. Henley*, 2017 COA 76, ¶ 19 (citation omitted); *see Assoc. Gov'ts of Nw. Colo. v. Colo. Pub. Utils. Comm'n*, 2012 CO 28, ¶ 35 (noting that, when construing statutes, the court should give effect to each word).

¶ 47　For these reasons, we conclude that "legal disability" under section 13-80-103.7(3.5)(a) denotes an inability to bring a lawsuit, based on some recognized policy of the law.

¶ 48　No facts in the record indicate that T.D. lacked the power to timely bring her suit based on some legal rule or policy. We therefore conclude that the record lacked any factual dispute that T.D. had a "legal disability" under section 13-80-103.7(3.5)(a). *See,*

*e.g.*, *Broyles*, 695 P.2d at 1143 n.7 ("It is certain . . . that the record discloses no legal disability that prevented Broyles from filing a timely application for diligence findings.").

4.   "[I]n a [S]pecial [R]elationship with the [P]erpetrator of the [A]ssault" and "[P]sychologically or [E]motionally [U]nable to [A]cknowledge the [A]ssault or [O]ffense and the [R]esulting [H]arm"

¶ 49   Finally, we assess whether the record raised a genuine issue of fact about whether T.D. (1) had a special relationship with defendant; and was therefore (2) unable, because of psychological or emotional reasons, to acknowledge the assaults or offenses and the resulting harm. *See* § 13-80-103.7(3.5)(a); *see also Sandoval v. Archdiocese of Denver*, 8 P.3d 598, 600 (Colo. App. 2000)(explaining that a victim can be disabled based on "a suppressed memory caused by the psychological and emotional trauma of a sexual assault by someone with whom the victim had a special relationship," so the statute allows victims to bring lawsuits within six years of when "their memory surfaced").

¶ 50   A familial relationship can constitute a "special relationship." *See* § 13-80-103.7(3.5)(a).  Accordingly, we agree with T.D. that the record raised the inference that she and defendant had a "special relationship" until 2015, when her mother and defendant divorced.

22

¶ 51  But the analytical problem with T.D.'s contention lies in the second prong of the definition for "person under disability": that T.D. was "psychologically or emotionally unable to acknowledge the assault or offense and the resulting harm." *Id.* The record indicates that she had disclosed the abuse several times.

¶ 52  In her response to defendant's summary judgment motion, she stated that she had "reported the sexual abuse to her school" when she was thirteen years old. Her mother was aware of her report because her mother "instructed her to change her testimony."

¶ 53  She also disclosed the abuse to doctors in 2005, and she agreed in her deposition that she had "acknowledged" the abuse at that time. Although she said that she had not "come to terms with everything . . . because [she] was a drug addict," she told doctors about the harm that the abuse had caused.

> Q.   And you reported to the doctors in these reports, which were in August of '05, that you had been sexually assaulted by your stepfather, correct? You told them that?
>
> A.   Yes, sir.
>
> Q.   And you described the harm and what the side effects from that was, correct?
>
> A.   Yes. Yes, sir.

(The deposition itself is not included in the record, but defendant included this excerpt in his motion for summary judgment. T.D. does not dispute its accuracy.)

¶ 54     Notwithstanding this disclosure in 2005, T.D.'s affidavit alleged that her "dependence to drugs and alcohol coupled with [her] severe mental disabilities prevented [her] from psychologically and emotionally acknowledging the harm resulting from the abuse [she] sustained." But she did not provide any details or support for this assertion, and a "conclusory statement made without supporting documentation or testimony is insufficient to create an issue of material fact." *Suncor Energy (USA), Inc. v. Aspen Petroleum Prods., Inc.*, 178 P.3d 1263, 1269 (Colo. App. 2007). Accordingly, we conclude that the record did not establish that that there was a triable issue of fact that, after her 2005 disclosure to her doctors, T.D. was unable to acknowledge, due to psychological or emotional reasons, defendant's abuse or the harm that it had caused her.

¶ 55     Because the record did not raise disputed facts as to any of the definitions of "person under disability," the statute of limitations was not tolled. We conclude that T.D.'s claims were barred when the statute finished running in 2011. Defendant was therefore

24

entitled to judgment as a matter of law, and the record supports the trial court's decision to grant defendant's summary judgment motion. *Cf. Sopris Lodging, LLC v. Schofield Excavation, Inc.*, 2016 COA 158, ¶¶ 18-20 (affirming summary judgment because claims were time barred).

¶ 56    The judgment is affirmed.

JUDGE DAILEY and JUDGE FOX concur.