24CA0459 Marriage of Hook 01-23-2025

COLORADO COURT OF APPEALS

Court of Appeals No. 24CA0459
City and County of Denver District Court No. 05DR2245
Honorable Marie Avery Moses, Judge

In re the Marriage of

Charles R. Hook,

Appellee,

and

Paula S. Rhoads Hook,

Appellant.

ORDER AFFIRMED

Division III
Opinion by JUDGE TOW
Martinez* and Bernard*, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced January 23, 2025

No Appearance for Appellee

Paula S. Rhoads Hook, Pro Se


*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2024.

¶ 1 This appeal concerns the efforts of Respondent, Paula S. Rhoads Hook, to secure access to benefits from the pension of Petitioner, Charles R. Hook, which benefits were allotted to her in the permanent orders upon the entry of a decree of legal separation in 2006. While Rhoads Hook has raised the issue at various times over the years, for reasons we will explain, we have jurisdiction in this appeal over only one order: a February 3, 2024, order denying Rhoads Hook's motion to reconsider a previous denial of a motion to enforce the judgment. We affirm.

## I.    Background

¶ 2 While, as noted, we have appellate jurisdiction over only one order, we believe it would nevertheless be of benefit to the parties — and particularly to Rhoads Hook, who is pro se — to provide a fairly extensive history of the background of this dispute.

¶ 3 In March 2006, after nearly ten years of marriage, the district court entered a decree of legal separation. The district court made findings and announced permanent orders in open court, then instructed the parties to obtain a transcript of the ruling to serve as the written permanent orders. The court explained to the parties that Rhoads Hook would likely qualify as indigent and, if so, the

court would authorize her portion of the cost of the transcript to be paid by the state. To that end, the court provided Rhoads Hook with a copy of a document known as a Form JDF 208. Rhoads Hook completed and submitted that form and the district court signed it, finding her indigent for purposes of obtaining a state-paid transcript.

¶ 4 Throughout the marriage — as well as after the decree was entered — Hook worked for the City of Denver and participated in the Denver Employees Retirement Plan (DERP). Relevant to this appeal, as part of the property division, the district court ordered that the pension be divided pursuant to the deferred distribution method authorized in *In re Marriage of Hunt*, 909 P.2d 525, 531-32 (Colo. 1995). In other words, the marital portion of Hook's eventual benefit would be calculated by dividing the number of months of the marriage by the total number of months Hook was a plan participant and multiplying that fraction by the amount of the

benefit.  That marital portion was then to be divided equally between Hook and Rhoads Hook.[1]

¶ 5       Unfortunately, when announcing its order, the district court simply said, "[W]hen the petitioner reaches retirement age, the administrator of that plan will be instructed to divide that benefit 50/50."  The court neglected to inform the pro se parties about the necessity of submitting to the pension plan administrator a document known as a "Domestic Relations Order" (DRO).  A DRO is a court order that must be submitted to the plan administrator to effectuate the court-ordered distribution.  Denver Rev. Mun. Code § 18-418(b).  A DRO must be entered by the court "either upon the entry of the decree and permanent orders, or within one hundred eighty (180) days thereafter."  *Id.* at § 18-418(b)(2).  The court file

---

[1] To better illustrate the calculation, if, hypothetically, Hook had thirty years of service in the pension plan, ten of which were during the marriage, one-third of his total benefit would be marital and thus subject to division.  So if, again hypothetically, his monthly benefit at retirement would be $4,500, the marital portion subject to division would be $1,500, and Rhoads Hook would be entitled to half of that — or $750.

does not reflect that a DRO was ever submitted to or signed by the district court.[2]

¶ 6     In November 2023, Rhoads Hook filed a motion to enforce the judgment, asking the court to "enforce the 50/50 pension awarded [in the 2006 permanent orders] and require DERP to install me as beneficiary." A magistrate denied the motion, noting (without citation to specific authority) the requirement that a DRO must be approved and entered by the court within 180 days after the decree, and submitted to the pension plan within ninety days thereafter. The magistrate's order informed the parties that, pursuant to C.R.M. 7(a), any request for review of the order would need to be filed within twenty-one days from the date the order was mailed to her (which, according to the court file electronic record, was January 4, 2024).

¶ 7     Rhoads Hook did not file a petition for review with the district court by January 25. Thus, by operation of law, the magistrate's

_____

[2] We note that, in responding to Rhoads Hook's motion to enforce the judgment, Hook asserts that he provided Rhoads Hook with "the appropriate documents" multiple times but she refused to complete and return them. We express no opinion on the veracity of this assertion.

order became the order of the district court at the end of that day, and any appellate review by this court of that order is forever barred. C.R.M. 7(a)(12).

¶ 8 The next day, Rhoads Hook filed a motion she titled "Motion for Reconsideration." This lengthy motion — signed, dated, and filed on January 26 — contained myriad contentions, including that the court improperly denied her motion to enforce the judgment "based on a hearsay comment that DERP had a 180-day deadline"; that she was only recently informed of that deadline; that she was denied a fair hearing, which she characterized as "possibly a Rule 59(d)(1) irregularity"; that she was continually denied an attorney, which she asserted was appointed for her back in 2006 and to which she contended she was entitled as an accommodation under the Americans with Disabilities Act (ADA); that she had been

subjected to a pattern of disability discrimination; and that as a result of her disability no limitations period can be applied to her.[3]

¶ 9    The district court denied the motion for reconsideration. The court explained that the DRO was required to be timely submitted, and that in the absence of that timely submission, the court lacked authority to order DERP to reallocate any portion of Hook's pension.

¶ 10    Rhoads Hook filed a timely appeal. We affirm.

## II.    Threshold Issues

¶ 11    Although not addressed in the district court's order, we believe it is necessary to address a few threshold issues Rhoads Hook raises on appeal related to (1) whether Rhoads Hook's disability impacts the timeliness of her motions and appeals, (2) our jurisdiction over this appeal, and (3) whether Rhoads Hook was — or should have been — appointed counsel.

---

[3] Rhoads Hook's motion contains extensive assertions related to convincing us that she has a disability. For purposes of this appeal, we take these assertions as true. She also dedicates a great deal of her motion to discussion of various injustices she believes she has historically suffered at the hands of Hook, her daughter, and the workers' compensation system. Because those issues are not relevant to our resolution of this appeal, we do not address them further.

## A. Timeliness

¶ 12 Because it impacts our analysis of our jurisdiction in this matter, we turn first to Rhoads Hook's assertion, in reliance on section 13-81-103, C.R.S. 2024, that her disability exempts her from the application of statutes of limitation and other deadlines. Rhoads Hook misunderstands this provision. As it pertains to the statute of limitation provisions, the term "person under disability" does not mean a person who has a *medical* disability but, rather, a person with a *legal* one. § 13-81-101(3), C.R.S. 2024. And a legal disability "denotes an inability to bring a lawsuit, based on some recognized policy of the law." *T.D. v. Wiseman,* 2017 COA 111, ¶ 47.

¶ 13 *T.D.* involved an individual who invoked section 13-81-103 in an attempt to avoid the expiration of the statute of limitation on certain civil claims against her former stepfather. The plaintiff alleged that she had suffered from drug and alcohol addiction, serious mental disabilities, post-traumatic stress disorder, depression, and other psychological disorders. *Id.* at ¶ 22. Notwithstanding these allegations, a division of this court held that

7

none of these facts indicated that the plaintiff lacked the power to timely bring her suit based on some legal rule or policy. *Id.* at ¶ 48.

¶ 14 Similar to *T.D.,* Rhoads Hook sets forth significant allegations establishing her medical disability. But that is simply not relevant to this issue. Notwithstanding Rhoads Hook's medical condition, nothing in the record suggests that she has ever been under a *legal* disability — i.e., that she lacked the power to timely assert her claims based on some legal rule or policy. Thus, Rhoads Hook was, and is, bound to comply with all filing deadlines.

### B. Jurisdiction

¶ 15 As noted, Rhoads Hook did not comply with the deadline in her attempt to obtain review of the magistrate's denial of her motion to enforce the judgment. She did not seek timely district court review of that order, filing it one day late without setting forth any facts that would constitute excusable neglect for her tardy filing. *Cf. C.S. v. People in Interest of I.S.,* 83 P.3d 627, 635 (Colo. 2004) (observing that neither section 19-1-108(5) — applicable to reviews of juvenile magistrate orders — nor C.R.M. 7(a) provide any exceptions for tardy petitions for review but holding that a district

court can entertain a late-filed petition for review under section 19-1-108(5) when the delay is the result of excusable neglect).

¶ 16    Nor does it appear that the district court accepted it as a late C.R.M. 7(a) petition for review, because the court did not "adopt, reject, or modify" the magistrate's order, which are the only permissible resolutions of a C.R.M. 7(a) petition. C.R.M. 7(a)(10). Instead, the court "denied" the motion for reconsideration. Because Rhoads Hook did not seek timely review of the magistrate's order by the district court, we have no jurisdiction to review that order. C.R.M. 7(a)(12); *In re Marriage of Stockman*, 251 P.3d 541, 542 (Colo. App. 2010). Similarly, Rhoads Hook did not file a timely motion under C.R.C.P. 59 to assert what she alleges was a "Rule 59(d)(1) irregularity" in the fairness of the proceedings. *See* C.R.C.P. 59(a) (requiring any request under that rule be filed within fourteen days of the entry of judgment).[4]

---

[4] Notably, while the motion at one point is directly addressed to the magistrate by name — asserting that "you, Judge Hubler, denied me that attorney" — magistrates lack the authority to consider motions to reconsider their orders. C.R.M. 5(a). Accordingly, it was proper, indeed necessary, that the district court judge, rather than the magistrate, address the motion.

¶ 17    Indeed, given that Rhoads Hook's motion was untimely to the extent it sought relief under C.R.M. 7(a) or C.R.C.P. 59, it is not clear on what basis the district court acted. The only proper basis we can surmise would be if the district court, liberally construing Rhoads Hook's pro se pleading, treated the motion as seeking relief from the judgment under C.R.C.P. 60. At least some of Rhoads Hook's contentions, construed liberally, could be viewed through a Rule 60 lens, such as her claims that (1) she was never informed of the need for a DRO (mistake, inadvertence, or surprise); (2) she could not comply with the DRO deadline because she "was very mentally compromised and unable to understand much in the situation of being overwhelmed by two litigation matters" (excusable neglect); and (3) the deadline had been concealed from her (fraud or other misconduct of an adverse party). We assume that was the district court's intent and, thus, review the court's order accordingly.

## C.    Appointment of Counsel

¶ 18    Before turning to the merits, though, we address one last threshold matter: Rhoads Hook's claim that she was entitled to — and received — appointed counsel. We first reject her assertion

that she is entitled to court-appointed and state-paid counsel as an ADA accommodation. Rhoads Hook cites no authority for this claim, and we are aware of no such requirement.

¶ 19 Nor do we agree that the judge that presided over the permanent orders hearing actually appointed her counsel. First and foremost, civil parties are simply not entitled to appointed counsel. *Padilla v. Padilla,* 645 P.2d 1327, 1328 (Colo. App. 1982). Further, the only statutory provision for appointment of counsel in a dissolution of marriage action is section 14-10-116, C.R.S. 2024, which allows for appointment of an attorney to serve as the legal representative of a child. There is no such provision for court-appointed counsel to represent a parent or spouse in such proceedings.

¶ 20 As the district court explained to Rhoads Hook earlier in the litigation, the document Rhoads Hook points to as reflecting an appointment of counsel is not what she thinks it is. The Form JDF 208 that the district court signed in March 2006 was not for the appointment of counsel but, rather, for a determination of Rhoads Hook's indigency so the court could authorize the state to pay her share of obtaining the transcript of the court's ruling. We recognize

that the document is entitled "Application for Public Defender, Court-Appointed Counsel, or Guardian ad Litem."  Notwithstanding this title, however, this form is used for any situation in which a party seeks to be declared indigent for purposes of being entitled to some aspect of litigation being paid for by the state.  *See* Chief Justice Directive 04-05, Appendix A (providing that persons requesting court-appointed assistance — whether appointment of counsel, a guardian ad litem, or a child and family investigator — on the basis of indigency must file a Form JDF 208).

¶ 21    We turn, then, to the merits of Rhoads Hook's appeal of the order denying what we deem to have been a C.R.C.P. 60 motion.

### III.    Rhoads Hook Is Not Entitled to Relief

¶ 22    We review the district court's decision whether to grant relief under C.R.C.P. 60(b) for an abuse of discretion.  *In re Marriage of Anderson*, 252 P.3d 490, 493 (Colo. App. 2010).  A court abuses its discretion when its decision is manifestly arbitrary, unreasonable, or unfair, or when it misconstrues or misapplies the law.  *In re Marriage of Fabos*, 2022 COA 66, ¶ 16.  We review de novo the court's application of the law.  *In re Marriage of Pawelec*, 2024 COA 107, ¶ 55.

¶ 23    The district court correctly noted that the Uniform Dissolution of Marriage Act requires that any agreement to divide a public employee retirement benefit must be filed with the plan administrator within ninety days after entry of the decree and the entry of permanent orders. § 14-10-113(6)(c)(I), C.R.S. 2024. And absent compliance with this provision, the district court has no jurisdiction to enter an order allocating such a benefit. § 14-10-113(6)(f). The district court further correctly noted that, under the Denver Municipal Code, any such division of the pension benefit required a DRO to be filed within that same 180-day period. Denver Rev. Mun. Code § 18-418(b)(2).

¶ 24    Because no DRO was provided to DERP within 180 days of the entry of the decree, the district court lacks jurisdiction to enter any order requiring DERP to divide the benefit at this late date.

¶ 25    While the district court did not address any other claim that may fall within the C.R.C.P. 60(b) rubric, we discern no basis for reversal.

¶ 26    To the extent Rhoads Hook seeks relief from the original judgment due to the lack of notice regarding the DRO provision, such claims are brought far too late. Any claims under C.R.C.P.

13

60(b) must be filed within a reasonable time and, in particular, claims under C.R.C.P. 60(b)(1) or (2) must be brought within 182 days after the judgment. As noted, the decree was entered nearly nineteen years ago. Moreover, based on the appellate record, it appears that Rhoads Hook was aware that there was an issue with the pension at least as early as 2011, as she noted as much in a motion filed in October of that year. Yet the November 2023 motion to enforce the judgment was the first time she took formal action to address that issue.

¶ 27 To the extent she seeks relief from the most recent order (the magistrate's order which became the order of the district court upon the expiration of the time for filing a petition for review), we reiterate that we cannot exercise any direct appellate review of that order. A litigant cannot file a C.R.C.P. 60 motion as a substitute for an appeal. *Harriman v. Cabela's, Inc.*, 2016 COA 43, ¶ 1.

¶ 28 Further, the purpose of C.R.C.P. 60 is to allow a court that has rendered judgment the opportunity to change the judgment when a new matter of fact or law arises that was extrinsic to the judgment because it had not previously been presented to the court. *Id.* at ¶ 26. But the allegations that might support a

C.R.C.P. 60 claim in Rhoads Hook's motion for reconsideration have been presented to the court before. Indeed, the allegations are directed at events that predate the most recent order — the alleged fraudulent acts of Hook and the court, any excusable neglect flowing from Rhoads Hook's disability-caused inability to follow through with the DRO process, and the lack of notice of the need for a DRO. There is no allegation of any mistake, fraud, or excusable neglect extrinsic to the magistrate's order that would support a collateral attack on that ruling.

## IV.    Disposition

¶ 29    The order denying Rhoads Hook's motion for reconsideration is affirmed.

JUSTICE MARTINEZ and JUDGE BERNARD concur.