The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader. The summaries may not be cited or relied upon as they are not the official language of the division. Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
August 28, 2025

## 2025COA74

**No. 24CA1399, *LT Income, LLC v. Purnell* — Taxation — Property Tax — Redemption of Real Property of Person Under Disability**

Section 39-12-104(1), C.R.S. 2025, provides that an owner of a property who was under a legal disability when a treasurer's deed was executed and delivered has a right to redeem the property within nine years of the recording of the deed. In this appeal of a district court's order concluding that a property owner had a statutory right of redemption, a division of the court of appeals holds, as a matter of first impression, that a person "under legal disability" for purposes of section 39-12-104(1) includes an individual who, because of a mental impairment, lacks the capacity to manage their affairs and adequately protect their interests in the underlying tax sale proceeding. The division also holds that the redemption statute doesn't impose a requirement that a property

owner, at the time of the execution and delivery of a treasurer's deed, must be subject to a protective proceeding under the Colorado Uniform Guardianship and Protective Proceedings Act, §§ 15-14-101 to -434, C.R.S. 2025, or have a legal disability imposed on them as contemplated by section 27-65-127, C.R.S. 2025. And because the division further concludes that the district court here properly determined that the plaintiff was under a legal disability when a treasurer's deed to his property was executed and delivered, the division affirms the court's judgment.

Court of Appeals No. 24CA1399
Fremont County District Court No. 22CV30030
Honorable Lynette M. Wenner, Judge

LT Income, LLC, a Colorado limited liability company,

Plaintiff-Appellant,

v.

David J. Purnell,

Defendant-Appellee.

JUDGMENT AFFIRMED

Division I
Opinion by JUDGE KUHN
J. Jones and Moultrie, JJ., concur

Announced August 28, 2025

Daniel B. Slater, Cañon City, Colorado, for Plaintiff-Appellant

Frascona, Joiner, Goodman and Greenstein, P.C., Britney Beall-Eder, Jordan C. May, Caroline W. Young, Boulder, Colorado, for Defendant-Appellee

¶ 1      Section 39-12-104(1), C.R.S. 2025, provides that a property owner who was "under legal disability at the time of execution and delivery of a tax deed . . . shall have the right to make redemption of such property at any time within nine years from the date of the recording of such tax deed." In this appeal of a district court's order granting a property owner's request for relief under the redemption statute, we interpret the meaning of the statutory phrase "under legal disability."

¶ 2      We hold that this phrase encompasses an individual who, because of a mental impairment, lacks the capacity to manage their affairs and adequately protect their interests in the underlying tax sale proceeding. We also hold that section 39-12-104(1) doesn't impose a requirement that a property owner, at the time of the execution and delivery of a treasurer's deed, must be subject to a protective proceeding under the Colorado Uniform Guardianship and Protective Proceedings Act (Colorado UGPPA), §§ 15-14-101 to -434, C.R.S. 2025, or under a legal disability within the meaning of section 27-65-127, C.R.S. 2025. Accordingly, we affirm the district court's judgment concluding that defendant, David J. Purnell, has a

statutory right of redemption to the property for which plaintiff, LT Income, LLC, holds a treasurer's deed.

## I.     Background

¶ 3     Purnell is an Air Force veteran who suffered a severe traumatic brain injury while serving as a military police officer.  In 1985, while responding to a domestic violence report, Purnell was shot in the head with a large caliber handgun.  He spent the next six months in a coma but ultimately survived his injuries.  As a result of this incident, the Air Force placed Purnell on medical retirement, and he "has a 100% service connection disability rating."

¶ 4     Less than two years later, in the spring of 1988, Purnell purchased a property in Fremont County.  He financed this purchase with a mortgage, which he had repaid in full by early 2018.  However, Purnell failed to pay property taxes for 2017 after his loan servicer stopped collecting them as part of the mortgage payment, and a tax lien attached to the property.  In November 2018, the Fremont County Treasurer sold the tax lien to LT Income at a public auction.  Purnell failed to exercise the generally applicable three-year statutory right to redeem the tax lien, and on

January 27, 2022, the treasurer issued a treasurer's deed to the property to LT Income. That same day, LT Income recorded the deed.

¶ 5    In March 2022, LT Income brought an action seeking to quiet title to the property. Purnell filed an answer and counterclaim approximately three and a half months after he was served with LT Income's complaint. He alleged that he was under a legal disability when the treasurer's deed was executed and delivered because he had been suffering from "cognitive deficiencies" resulting from his traumatic brain injury. Based on this disability, Purnell asserted that he had the right to redeem his property within nine years of the date the deed was recorded, as provided in section 39-12-104(1).

¶ 6    LT Income successfully moved to strike Purnell's answer and counterclaim as untimely. *See* C.R.C.P. 12(a)(1) ("A defendant shall file his answer or other response within [twenty-one] days after the service of the summons and complaint . . . ."). Soon after the court struck Purnell's pleadings, LT Income filed a motion for a default judgment. Purnell contested that motion and filed a separate motion for an enlargement of time in which to file his answer and

counterclaim. In those filings, Purnell again claimed that he was under a legal disability when the treasurer's deed was executed and delivered. He explained that he suffers (and had suffered) from various physical and mental impairments, including problems with short-term memory, attention, and understanding the proceedings against him. Purnell argued that, based on these impairments, the court should excuse the untimely answer and counterclaim, deny entry of a default judgment, and ultimately set aside the treasurer's deed by allowing him to redeem the property in accordance with section 39-12-104. *See* C.R.C.P. 6(b)(2) (giving district courts discretion to accept filings past the deadline when "the failure to act was the result of excusable neglect"); C.R.C.P. 55(b)(1) ("[N]o judgment by default shall be entered against an . . . incompetent person unless represented in the action by a general guardian, guardian ad litem, conservator, or such other representative who has appeared in the action.").

¶ 7 The district court noted that its ruling on the motions turned on the meaning of the undefined phrase "under legal disability" in section 39-12-104(1). The court addressed that issue in a written order, concluding that (1) an individual may be under a legal

disability by operation of various statutory criteria; and (2) the statute didn't appear to require an adjudication of incapacity prior to, or effective at, the time of the execution and delivery of a treasurer's deed.

¶ 8 Then, after holding an evidentiary hearing to determine whether Purnell has a right of redemption under the statute, the court issued a second order in August 2023. The court observed that in assessing whether Purnell was under a legal disability within the meaning of the redemption statute, it had to determine whether "(1) Mr. Purnell has shown by clear and convincing evidence, that (2) at the time the tax deed issued, (3) he lacked capability to act for himself in managing or administering his financial affairs, (4) because of a mental impairment, and (5) he did not have a legal representative." And because Purnell carried his burden of proof, the court concluded that he was entitled to redeem the property within nine years of the date the treasurer's deed was recorded.

## II. Analysis

¶ 9 LT Income contends that the district court erred by concluding that Purnell has a right of redemption under section 39-12-104.

Specifically, LT Income contends that the district court misinterpreted and misapplied section 39-12-104 because while Purnell perhaps has some disabilities, the phrase "under legal disability" in the redemption statute only encompasses property owners who, at the time the treasurer's deed was executed and delivered, (1) were minors under the age of eighteen or mentally incompetent; or (2) had been adjudicated incapacitated in a protective proceeding under the Colorado UGPPA, or were under a legal disability within the meaning of section 27-65-127. We disagree with both contentions.

¶ 10    Before we turn to the merits of these arguments, we first set forth the applicable standard of review and governing law.

### A.    Standard of Review

¶ 11    We review de novo questions of statutory interpretation. *Roane v. Elizabeth Sch. Dist.*, 2024 COA 59, ¶ 23. Likewise, we review de novo whether a district court applied the correct legal standard. *Wal-Mart Stores, Inc. v. Crossgrove*, 2012 CO 31, ¶ 7. To the extent LT Income's appeal requires us to review the district court's findings of fact, we will disturb those findings only if they

are clearly erroneous with no support in the record. *See Frisco Lot 3 LLC v. Giberson Ltd. P'ship, LLLP*, 2024 COA 125, ¶ 66.

¶ 12 When interpreting a statute, our task is to ascertain and give effect to the legislature's intent. *Roane*, ¶ 24. We begin this inquiry by considering the plain language of the statute, giving its words and phrases their plain and ordinary meanings. *Id.* In doing so, "[w]e look to the entire statutory scheme to give consistent, harmonious, and sensible effect to all of its parts, and we avoid constructions that would render any words or phrases superfluous or that would lead to illogical or absurd results." *Id.* "Because words often have several meanings or nuanced meanings, 'the precise meaning actually intended by an undefined term often must be determined by reference to other considerations, like the context in which it is used.'" *T.D. v. Wiseman*, 2017 COA 111, ¶ 36 (quoting *People v. Opana*, 2017 CO 56, ¶ 12). If we conclude that the statute is unambiguous, then we apply it as written and need not resort to other rules of statutory construction. *Roane*, ¶ 24.

## B. Tax Liens, Treasurer's Deeds, and Redemption Rights

¶ 13 A property owner is required to pay property taxes. *Arnold v. Brent*, 2024 COA 104, ¶ 16. When property taxes go unpaid, "a tax

7

lien attaches against the property for the amount of taxes levied against the property together with any delinquent interest, costs, and fees." *Dove Valley Bus. Park Assocs., Ltd. v. Bd. of Cnty. Comm'rs*, 945 P.2d 395, 399 (Colo. 1997); § 39-1-107(2), C.R.S. 2025. The county treasurer is authorized to sell the tax lien at a public auction to a third party who pays the delinquent taxes, interest, and any fees that are due. § 39-11-115(1), C.R.S. 2025.

¶ 14     After the tax lien is sold, the property owner has a three-year statutory right to redeem the tax lien by paying the outstanding taxes, interest, and costs. *Actarus, LLC v. Johnson*, 2019 COA 122, ¶ 12; *see* § 39-11-120(1), C.R.S. 2025; § 39-12-103(1), (3), C.R.S. 2025. But if the owner fails to timely exercise this right of redemption, the holder of the unredeemed tax lien may apply for a treasurer's deed to the property. § 39-11-120(1); *Red Flower, Inc. v. McKown*, 2016 COA 160, ¶ 1. The county treasurer shall issue a treasurer's deed to the lienholder after providing notice to the property owner, any occupant, and all interested persons of record. *Wells Fargo Fin. Colo., Inc. v. Olivas*, 2017 COA 158, ¶ 2; § 39-11-128(1), C.R.S. 2025.

¶ 15 Once issued, a treasurer's deed "terminate[s] the [original property owner's] entire ownership interest in the subject property by conveying the totality of the land on which the taxes are delinquent" to the lienholder. *Bolser v. Bd. of Comm'rs*, 100 P.3d 51, 54 (Colo. App. 2004). But even a validly issued treasurer's deed can be set aside in some circumstances. As relevant to this appeal, a property owner who was "under legal disability at the time of execution and delivery of a tax deed . . . shall have the right to make redemption of such property at any time within nine years from the date of the recording of such tax deed." § 39-12-104(1). Put differently, a property owner's legal disability will not prevent the attachment of a tax lien, the sale of that lien, or the subsequent issuance of a treasurer's deed. But recording that deed doesn't extinguish a qualifying property owner's ability to void the deed by redeeming the property through the procedure set out in the redemption statute. *Actarus*, ¶ 15.

### C. Disability Statutes

¶ 16 The phrase "under legal disability" is not defined in the statutes addressing the right of redemption or in other provisions that apply to treasurers' sales of property tax liens. However,

9

numerous other statutes address situations in which people are under a disability. As relevant to LT Income's arguments, one of those statutes modifies the way that statutes of limitation apply in actions involving litigants "under disability." *See* §§ 13-81-101 to -107, C.R.S. 2025. The modifying statute defines a "[p]erson under disability" as "any person who is a minor under eighteen years of age, a mental incompetent, or a person under other legal disability and who does not have a legal guardian." § 13-81-101(3).

¶ 17    The term "mental incompetent" refers to a person who is "insane," as defined in section 16-8-101(1), C.R.S. 2025, or to "a person with an intellectual and developmental disability as defined in section 25.5-10-202," C.R.S. 2025. § 25.5-10-237(1), C.R.S. 2025; *see Southard v. Miles*, 714 P.2d 891, 898-99 (Colo. 1986) (applying section 27-10.5-135(1), C.R.S. 1985, now codified as section 25.5-10-237(1)). An individual is "insane" if the individual "is so diseased or defective in mind at the time of the commission of [an] act as to be incapable of distinguishing right from wrong with respect to that act." § 16-8-101(1). And a "[p]erson with an intellectual and developmental disability" is "a person determined by a community-centered board to have an intellectual and

developmental disability," § 25.5-10-202(26)(b),[1] C.R.S. 2023, which

is a disability

> that manifests before the person reaches
> twenty-two years of age, that constitutes a
> substantial disability to the affected person,
> and that is attributable to an intellectual and
> developmental disability or related conditions,
> including Prader-Willi syndrome, cerebral
> palsy, epilepsy, autism, or other neurological
> conditions when the condition or conditions
> result in impairment of general intellectual
> functioning or adaptive behavior similar to that
> of a person with an intellectual and
> developmental disability.

§ 25.5-10-202(26)(a).

### D. Purnell's Claimed Disabilities Rendered Him "Under Legal Disability" for the Purposes of the Redemption Statute

¶ 18 Relying on the above statutory provisions, LT Income argues

that a person is only "under a legal disability" if that person falls

within the sweep of the statute modifying the statutes of limitation.

LT Income asserts that it "should be safe to assume that the class

of persons who are under a legal disability include[s] minors under

---

[1] We refer to the definition of a "[p]erson with an intellectual and developmental disability" under section 25.5-10-202(26)(b), C.R.S. 2023, in effect at the time of the district court's ruling, because the relevant subsection has since been amended. *See* Ch. 83, sec. 38, § 25.5-10-202(26)(b), 2021 Colo. Sess. Laws 338.

11

the age of eighteen and those determined to be mentally incompetent," meaning individuals who are either insane or determined by a community-centered board to have an intellectual and developmental disability.

¶ 19    That portion of the argument is true as far as it goes.  But LT Income then broadly argues that those are the only circumstances in which an individual can be deemed "under legal disability" as contemplated in the redemption statute.  This argument reads the statute too narrowly.

¶ 20    For starters, the statute of limitations provision that LT Income urges us to apply in interpreting section 39-12-104(1) doesn't exclusively equate a legal disability with minority and mental incompetency.  Instead, section 13-81-101(3) provides that a "[p]erson under disability" includes "a person under *other* legal disability and who does not have a legal guardian."  (Emphasis added.)  In doing so, the plain language of this provision acknowledges that other circumstances may qualify as a legal disability.  LT Income's argument fails because it would require us to read these words out of the statute.  *See Huffman v. City & County of Denver*, 2020 COA 59, ¶ 17 ("We may not read language

out of a statute . . . .").  And had the drafters of section 39-12-104(1) intended for a legal disability to only mean minority and mental incompetency, they would have used specific language to do so or, at least, would have referenced section 13-81-101(3). *See Dep't of Transp. v. Stapleton*, 97 P.3d 938, 943 (Colo. 2004) ("[W]e presume that the General Assembly understands the legal import of the words it uses and does not use language idly, but rather intends that meaning should be given to each word."); *Arapahoe Cnty. Dep't of Hum. Servs. v. Velarde*, 2022 CO 18, ¶ 23 (noting that if the legislature intended to include in one statute a term that another statute set forth, the legislature would have referenced that other statute).  We see no such indication in the redemption statute.

¶ 21    LT Income's view is also inconsistent with the only published Colorado appellate court decision interpreting the phrase "under legal disability" in the redemption statute.  In *Actarus*, the county issued a treasurer's deed for property owned by an individual who had been under guardianship as a result of her severe mental illness.  *Actarus*, ¶ 2.  While the owner's husband had served as her court-appointed guardian until his death, a successor guardian

hadn't been appointed for the owner when Actarus, LLC, obtained the treasurer's deed. *Id.* at ¶ 29. A division of this court upheld the district court's ruling that the owner was under a legal disability and therefore entitled to redeem her interest in the property as provided in section 39-12-104. *Actarus*, ¶¶ 9, 40. The division concluded that "an 'owner of real property' who 'is under legal disability' *includes* an individual who a court has determined is incapacitated and who does not have a legal guardian who can advocate on her behalf." *Id.* at ¶ 19 (emphasis added). Thus, the division held that the statute applies to incapacitated property owners proceeding without the assistance of a legal guardian.

¶ 22    It's true that *Actarus* is factually distinguishable from the case before us because, unlike the property owner in that case, Purnell wasn't under guardianship or other protective order when the treasurer's deed was executed and delivered. Still, *Actarus* weighs against LT Income's narrow interpretation of "under legal disability." Contrary to LT Income's view, the division concluded that the phrase encompasses an incapacitated property owner, *id.*, because that owner is "an individual other than a minor, who is unable to effectively receive or evaluate information or both or make

14

or communicate decisions to such an extent that the individual lacks the ability to satisfy essential requirements for physical health, safety, or self-care," § 15-14-102(5), C.R.S. 2025.

¶ 23    Additionally, LT Income's interpretation of section 39-12-104 is at odds with the dictionary definition of "legal disability," the Colorado Rules of Probate Procedure, and statutes allowing courts to impose a legal disability.  Specifically, Black's Law Dictionary defines "legal disability" as "[a] court-determined lack of capability to act for oneself in managing or administering financial affairs, usu[ally] because the person is a minor or has a mental impairment."  Black's Law Dictionary 579 (12th ed. 2024). Similarly, the probate rules provide that a person under a legal disability includes, but is not limited to, a person who is (1) under eighteen years of age or (2) incompetent or incapacitated to such an extent that the individual is incapable of adequately representing their own interests.  C.R.P.P. 12(b).  And under the statutory scheme governing mental health care and treatment, a district court may grant a petition to impose a legal disability upon an individual if the court finds, by clear and convincing evidence, that the individual (1) has a mental health disorder and is either a

danger to the individual's self or others, is gravely disabled, or is insane; and (2) the requested imposition of disability is both necessary and desirable. § 27-65-127(1)-(2), (5)(d).

¶ 24     Thus, we conclude that an individual may have a legal disability even if the individual is not a minor, insane, or suffering from an intellectual and developmental disability within the meaning of section 25.5-10-202(26)(a). *See, e.g., Wiseman,* ¶¶ 2, 47 ("[F]or purposes of section 13-80-103.7(3.5)(a), C.R.S. 2016," the general limitations statute for child victims of sexual assault, a legal disability "means an inability to bring a lawsuit based on some policy of the law."). Considering the phrase "under legal disability" in the context of section 39-12-104 where it appears, *see Wiseman,* ¶ 36, we hold that this phrase includes an individual who, because of a mental impairment, lacks the capacity to manage their affairs and adequately protect their interests in the underlying tax sale proceeding. Accordingly, we perceive no error in the district court's conclusion that whether Purnell was legally disabled within the meaning of the redemption statute turned, in part, on whether "he lacked capability to act for himself in managing or administering his financial affairs . . . because of a mental impairment."

16

¶ 25 During the evidentiary hearing, Purnell presented evidence that he was incapacitated at the time of the execution and delivery of the treasurer's deed. Dr. Kimberly Leib — who was qualified as an expert in clinical neuropsychology — determined that Purnell meets the diagnostic criteria for major neurocognitive disorder. She opined that Purnell's disorder had "multiple etiologies": the traumatic brain injury, his alcohol abuse, and possibly an unspecified neurodegenerative condition. Dr. Leib reported that Purnell exhibits "severe deficits in attention, visual and verbal memory, visuospatial functioning, aspects of language (verbal fluency), and aspects of executive functioning." She testified that Purnell's cognitive and mental deficits are sufficiently severe to negatively affect his ability to live alone safely and independently manage his finances. Dr. Leib opined that Purnell needs assistance because of his profound memory impairment and the concomitant risk of financial exploitation by others.

¶ 26 Similarly, Maria Mora, a licensed clinical social worker and a mental health therapist with the Department of Veterans Affairs, conducted a mental health evaluation of Purnell and concluded that he is cognitively impaired. Mora reached that conclusion because

Purnell has problems with short-term memory, is easily confused when asked certain questions, and is unable to understand the consequences of his actions. To illustrate the extent of Purnell's cognitive deficits, Mora recounted how he was unsure why he was meeting with her, "even though [they] had discussed [the upcoming evaluation] just two days prior." She testified that "because of the traumatic brain injury, . . . [Purnell's] judgment was impaired and continues to be impaired. That's not going to change."

¶ 27 And Purnell's friend, Iris Donley, likewise testified that Purnell's memory problems are "pretty obvious." Donley said that Purnell doesn't know how to budget or pay his bills and that he has "no concept of money." She testified that he has difficulty carrying out basic daily functions, such as maintaining personal hygiene, dressing himself properly, and "just really communicating to people what his needs [a]re."

¶ 28 True, some of the above testimony was grounded on Purnell exhibiting these conditions after the tax sale. However, the record supports the district court's inference that those conditions also existed at the time of the execution and delivery of the treasurer's deed. *See Owners Ins. Co. v. Dakota Station II Condo. Ass'n*, 2021

18

COA 114, ¶ 50 (noting that, as the fact finder, it's for the district court "to resolve factual issues, determine witness credibility, weigh evidence, and make reasonable inferences from that evidence"). For example, Purnell told Mora that after he sustained the traumatic brain injury in 1985, he had headaches for several years, "[h]e had to have another brain surgery in 1991 and his memory became worse," and he generally "ha[d] been having problems with thinking" after the shooting. Moreover, Purnell testified that people had previously taken advantage of him financially, saying, "They would represent themselves as my friends and ask me if they could have money, and me being the person I am, I acquiesced." And as noted above, he had to be placed on medical retirement due to his traumatic brain injury and "has a 100% service connection disability rating."

¶ 29 Under these circumstances, then, we perceive no error in the district court's determination that Purnell's mental impairments

qualified as a legal disability within the meaning of the redemption statute.[2]

### E. LT Income's Specific Adjudication Argument Fails

¶ 30 LT Income doesn't challenge the evidence that Purnell presented in the district court or the findings of fact that the court made based on that evidence. Still, citing *James v. Brookhart Lumber Co.*, 727 P.2d 1119, 1120-21 (Colo. App. 1986), LT Income contends that Purnell's claimed disabilities are insufficient as a matter of law because when the treasurer's deed was executed and delivered, there was no court proceeding to appoint a guardian or conservator or to impose a legal disability on him under section 27-65-127. Put another way, LT Income argues that for a property owner to be under a legal disability as provided in section 39-12-104(1), a court proceeding under one of two available statutory processes must already be underway to reach that

---

[2] In making that determination, the district court held Purnell to a higher burden of proof by clear and convincing evidence. We note that the proper standard was proof by a preponderance of the evidence. *See* § 13-25-127(1), C.R.S. 2025 (noting that, with exceptions not relevant here, "the burden of proof in any civil action shall be by a preponderance of the evidence"). However, we would affirm the court's determination under either standard.

determination. Moreover, LT Income argues that the determination of disability must occur before the treasurer's deed is executed and delivered. We're not persuaded, for several reasons.

¶ 31 First, LT Income's reliance on *James* is misplaced. In that case — involving the statute of limitations for reopening workers' compensation claims — a division of this court concluded that an agency hearing was not the proper forum to raise and decide the issue of whether the petitioner was legally disabled for the purposes of tolling the limitations period under sections 13-81-101(3) and 13-81-103. *James*, 727 P.2d at 1120-21. The division reasoned that the proceedings under the Colorado UGPPA and 27-65-127 offered "a statutory scheme for the determination of a legal disability," and those statutes required "an interested person [to] petition the court for a specific finding as to the existence of a legal disability." *James*, 727 P.2d at 1121. But while the *James* court correctly observed that a disability determination made in those proceedings would suffice to show that an individual was under a legal disability for the relevant tolling provisions, *James* doesn't stand for the proposition that those are the only proceedings in which a legal disability could be established, much less that the

21

determination must occur at a particular time. To the contrary, the division indicated that the petitioner could still establish that he was legally disabled at the time his claims accrued by obtaining a subsequent adjudication on that issue. *Id.*

¶ 32 Second, as the district court observed, the redemption statute doesn't impose a prior adjudication requirement, let alone require that the adjudication must originate from a specific proceeding. If the General Assembly wanted to limit the application of the nine-year disability exception to the general redemption period only to those property owners who were already under a protective order or had a legal disability imposed on them when a treasurer's deed was executed and delivered, it would have employed language to that effect. *See Stapleton*, 97 P.3d at 943; *see also Nieto v. Clark's Mkt., Inc.*, 2021 CO 48, ¶ 12 (noting that we do not add to, or subtract from, the words that the General Assembly has chosen). For example, the General Assembly included such limiting language in the statute addressing the disposition of a disabled person's small estate, providing that "a verified petition for the distribution without administration of the estate of a person under disability" must include "[t]he date upon which and the court by which the

person under disability was adjudged as having a behavioral or mental health disorder, an intellectual and developmental disability, or other incapacitating disability." § 15-14-118(1), (2)(c), C.R.S. 2025. The absence of similar language in section 39-12-104 suggests that the General Assembly didn't intend to impose a similar requirement there. *See Deutsch v. Kalcevic*, 140 P.3d 340, 342 (Colo. App. 2006) ("[W]hen the legislature includes a provision in one statute, but omits that provision from another similar statute, the omission is evidence of its intent.").

¶ 33 Third, it would be contrary to the rest of the redemption statute to engraft a requirement that a prior adjudication of a disability in certain specific proceedings is a prerequisite to show that a property owner was under a legal disability. The statute provides that, if the property owner's legal disability is removed or ceases within the nine-year period, the right of redemption must be asserted and take place within a period of not more than two years after the removal or cessation of the disability.[3] § 39-12-104(1).

---

[3] However, the right of redemption must be exercised within nine years of the recording of the tax deed, even if the legal disability is not removed or never ceases. § 39-12-104(1), C.R.S. 2025.

¶ 34    This structure is consistent with the purpose of such tolling provisions.  A legal disability that affects an individual's ability to assert a right on their own terminates with the appointment of a legal guardian to advocate on his behalf.  *See Elgin v. Bartlett*, 994 P.2d 411, 414 (Colo. 1999) (recognizing this principle in considering whether a litigant was a "person under disability" as contemplated by section 13-81-101(3)), *overruled in part on other grounds by, Rudnicki v. Bianco*, 2021 CO 80, ¶ 44.  Given that such an appointment typically occurs in a protective proceeding, a property owner who was already under guardianship or conservatorship when the treasurer's deed was executed and delivered would not fall under the exception and would be subject to the general three-year period to redeem the property.  *See* § 15-14-311(1)(a), C.R.S. 2025 (appointment of a guardian); § 15-14-401(1)(b), C.R.S. 2025 (appointment of a conservator).  Thus, specifically as to these property owners, reading the phrase "under legal disability" as requiring a prior adjudication in a protective proceeding would read out the statute's provision allowing owners under a disability to exercise the right of redemption within nine years because their disability would have been imposed and removed before the deed

was executed and delivered. We must avoid such constructions. *See Huffman*, ¶ 17; *see also Goodman v. Heritage Builders, Inc.*, 2017 CO 13, ¶ 7 (noting that courts should reject statutory interpretations that render words or phrases superfluous).

¶ 35 Fourth, LT Income's argument fails to account for the fact that adjudication of legal disabilities is almost always a process that retrospectively recognizes an impairment that already exists. In other words, adjudication is the court's determination of the cause of an existing situation. Consequently, interpreting the redemption statute as covering only those property owners who had already been adjudicated with disabilities in proceedings under the Colorado UGPPA or section 27-65-127 would mean that the statute wouldn't apply to any previous situations in which the disability had already affected the individual's rights. Moreover, as happened in this case, there are numerous other situations in which a district court may make a determination of legal disability. LT Income points us to no compelling authority limiting such a determination to proceedings under the Colorado UGPPA or section 27-65-127.

¶ 36 In sum, we conclude that the district court didn't err by determining that because Purnell was under a legal disability when

the treasurer's deed was executed and delivered to LT Income, Purnell could redeem his property within nine years of January 27, 2022, when the deed was recorded, as permitted by section 39-12-104(1).

## III. Disposition

¶ 37    The judgment is affirmed.

JUDGE J. JONES and JUDGE MOULTRIE concur.